## No. 11,876.

### TODD v. THE PEOPLE.

Decided November 28, 1927.

Plaintiff in error was convicted of obtaining a check by means of a confidence game.

### *Affirmed.*

1. CRIMINAL LAW—*Confidence Game.* In a prosecution for obtaining a check by a confidence game, it is held that the evidence justified a finding that the transaction was a swindling operation.

2. *Evidence.* Defendant in a criminal case was asked on cross-examination if he and Acker were not out on bond together. Objection to the question was overruled. There was no error in this ruling, as apparently the question was asked in an attempt to contradict defendant's statement that he had not seen or heard of Acker.

3. *Evidence.* No error can be predicated on the refusal of the court to permit a witness to testify to a certain conversation, where the question was subsequently repeated and answered.

4. APPEAL AND ERROR—*Abstract.* A transcript of record cannot be made to take the place of the abstract required by the Supreme Court rules.

5. *Evidence—Exclusion.* There is no error in the exclusion of testimony, the only purpose of which is to corroborate other witnesses on a point which is not disputed.

6.   EVIDENCE—*Exclusion.*  In a criminal trial, the exclusion of an offered
     lease and check given in a transaction between third parties held
     not an abuse of the discretion lodged in the trial court as to the
     admission and rejection of evidence.

7.   CRIMINAL LAW—*Evidence—Similar Offenses.*  In a criminal prosecu-
     tion for obtaining a check by a confidence game, it is permissible
     on cross-examination of defendant to ask him whether he had com-
     mitted other offenses of the same nature, where such examination is
     directed to the question of intent.

8.   INSTRUCTIONS—*Requests.*  Requested instructions, so far as applicable,
     held sufficiently covered by the instructions given.

*Error to the District Court of the City and County of Denver, Hon. James C. Starkweather, Judge.*

Messrs. SABIN & SABIN, Mr. JAMES D. PARRIOTT, for plaintiff in error.

Mr. WILLIAM L. BOATRIGHT, Attorney General, Mr. WILLIAM W. GAUNT, Assistant, for the people.

*En Banc.*

MR. JUSTICE BUTLER delivered the opinion of the court.

TODD was convicted of obtaining a $1,500 check from one Levand by means of the confidence game, and was sentenced to imprisonment in the penitentiary for not less than 5 years nor more than 7.

Todd sold to Levand certain trackage property in Denver, and received the check in payment and cashed it at the bank.  The property was owned by Josiah M. Shively, of Omaha, Nebraska, who never parted with his title.  Todd procured a warranty deed purporting to be signed by Josiah M. Shively, and naming Frank J. Wear as grantee, and caused Wear to convey the property to Levand on June 29, 1926.  Wear testified that he executed the deed to Levand at the request of Todd. That the real owner, Josiah M. Shively, did not sign the

deed purporting to convey the property to Wear, is admitted by Todd, and was proven by Shively's testimony. Scott, of an abstract company, testified that about June 28, 1926, his company furnished a new abstract of title to the property "for F. H. Todd," but that he did not remember him at all. Todd testified that he was engaged in the real estate business in Denver, and that he bought the trackage property from a man who came to his office and represented himself to be Josiah M. Shively, the owner of the property. He described the man's height, age, weight and complexion. He testified that he had caused "Shively" to convey the property to Wear because there were "some judgments against him" (Todd). On cross-examination, he admitted that he owned an automobile, but that title thereto was not in his name, but in the name of the sister of this same Wear. He said that he caused Wear to deed the trackage property to Levand; that for the trackage property he (Todd) deeded to "Shively" his equity in 40 acres of dry land in Adams county and gave $250 in cash and his check for $400; that his equity in the land was worth $1,700 or $1,800, and that he paid about $135 taxes on the land. But on cross-examination, he said that he did not know whether the taxes were paid or not—that he gave the money to "Shively"; and his testimony concerning the value of his equity was badly shattered, if not totally destroyed. He testified that he notified Artrip, his tenant on the Adams county land, that he had sold the land to Shively. He introduced in evidence a warranty deed signed by Claude C. White, dated and acknowledged in April, 1924, conveying to Todd the Adams county land; which deed, he said, he had withheld from record until the Todd-"Shively" deal was closed, because of the judgments above referred to. This deed is included in the transcript of the record. The deed has several remarkable features. The principal typewritten part of the deed is in small type. The name of the grantee was erased and the name "F. H. Todd," in large type, sub-

stituted therefor. That the grantee was a woman is evidenced by the fact that the words "she is," in small type, have been partly erased and "he is," in large type, substituted. In like manner, the words "her heirs," in small type have been changed to "his heirs," in large type. In another place the words "her heirs," in small type remain unaltered. The description of the property was of lots in the "City and County of" in small type. Here, the words "City and" and the word "Denver" were erased and the word "Adams," in large type, was substituted for "Denver." The description of the property originally was of lots in an addition, written in small type. The name "Hyde Park Addition" can be made out with some difficulty. There was an attempted erasure of the description, and the description of the land in Adams county, written in large type, was substituted. Asked why the deed has the erasures and changes, Todd answered: "I couldn't tell you that either." He testified that White had gone to Florida; that they formerly were partners. Todd introduced in evidence a contract between "Josiah M. Shively" and Todd for the sale and purchase of the trackage property, dated June 15, 1926, and written on the letterhead of "The Todd-White Company"; a deed by "Josiah M. Shively" to Frank J. Wear, conveying the trackage property; and a deed by Todd to "Josiah M. Shively" conveying the Adams county land. The "Shively"-Todd contract was typewritten, the type corresponding in size and style with the large type in the White-Todd deed, to which we already have called attention. Todd said that when he gave his $400 check to "Shively," it was understood that Todd did not have sufficient funds on deposit to pay the check, and that "Shively" was to hold the check until Todd negotiated a loan or sold the trackage property. Before Todd saw an abstract of title to the trackage property he claims to have bought of "Shively," he paid to this total stranger $250 in cash on the purchase price, and $135 with which to pay taxes, and conveyed to him the

Adams county land, the equity in which, Todd swears, was worth $1,700 or $1,800. This extraordinary situation he attempted to explain by saying that he had "looked up the records" and knew that the property was clear and stood in Shively's name; but, upon being questioned further, he said that he did not remember how far back he went—"probably just two or three entries." Some of these matters do not appear in the abstract, but are found in the transcript of the record.

1. From the statement of facts, it is obvious that there is no merit in counsel's contention that the evidence was not sufficient to support the verdict and the judgment. It was for the jury to determine whether or not the deal was such as Todd claims it was; whether or not it is probable that Todd would have dealt with an unidentified stranger in the way he claims to have dealt with him, without making any inquiry, except of the stranger himself, as to his identity; and whether—and this is the all-important question—the transaction between Todd and Levand was a legitimate business transaction, or a swindling operation on the part of Todd. The evidence fully justified the finding that the transaction was of the latter character.

2. On cross-examination, the district attorney asked Todd whether he and one Acker were not out on bond together. Objection to the question was overruled, and this ruling is assigned as error. The witness was not pressed for an answer, and in fact did not answer the question. In an effort to show another similar transaction, Todd was being questioned about his connection with Acker in a deal concerning the Adams county land. He was asked whether he knew a man by the name of Acker. He said he did. He was asked whether, after Todd had deeded to "Shively" the Adams county land, Todd and Acker together put on record the deed from Todd to "Shively." He answered, "I should say not." He was asked whether, after having placed the deed on record, Todd did not send it to a purported "Josiah M.

Shively,'' in Olathe, Kansas, ''whom you knew never existed?'' He answered, ''I did not.'' ''Q. And after that didn't you give Acker railroad fare to go to Olathe, Kansas, and didn't he say that he was Josiah M. Shively, and get that deed? A. I should say I did not. Q. You did not? A. No, sir, absolutely not. I never had any dealings pertaining to this land with Mr. Acker at any time. Q. You have had some dealings with Mr. Acker over other forged paper? A. They say it was forged. * * * Q. Do you not know, Mr. Todd, that after this purported deed to Shively to the Adams county land was given, Acker later traded that same land to a party by the name of.....................for some terraces here in Denver? * * * A. Not that I know of. Q. And do you not know that Mr. Acker, at your instigation, went to this Mr. Shively in Omaha recently and tried to get Mr. Shively to give him a quitclaim deed to that land out here in Adams county that has been testified to here? A. I do not. I haven't seen or heard of Mr. Acker. * * * Q. You and Mr. Acker are out on bond together aren't you?'' This is the question that was objected to and to which no answer was given. Apparently this question was asked in an attempt to contradict Todd's statement, ''I haven't seen or heard of Mr. Acker.'' We cannot say that the ruling was reversible error.

3. Shelton, a witness for the defendant, testified that during the month of June, 1926, in Todd's office, he met a man whom Todd introduced to him as Josiah M. Shively, of Kansas; that the man did not deny this; and that the witness saw the same man there again a day or two later. The description of the man corresponds closely with Todd's description of the man Todd testified that he dealt with. Todd complains of the court's refusing to permit the witness to testify to his conversation with the man relative to some persons living near Rocky Ford and Ordway. From an examination of the transcript of the record, we are of the opinion that the ruling was right.

4. It is claimed that the court refused to permit the witness Shelton to testify to his conversation with the same man as to the latter's "ownership of trackage on Market street." An examination of the transcript—the abstract being insufficient—shows that the court permitted the witness to testify to the entire conversation on the first occasion. He testified that nothing was then said about the "Shively"-Todd deal. As to the second occasion, the witness said he conversed with the man four or five minutes; that the conversation was "just relative to our acquaintance, or rather our friendship with neighbors we had; but he didn't seem to speak about it after I introduced the matter, so I quit talking about it, and Mr. Todd proceeded to give me my information [on some other business], and I left." "Q. What, if anything, did you hear between 'Shively' and Todd as to this trackage proposition?" The court here remarked: "I will not allow you to go into that. Mr. Sabin: Save an exception. Q. Was there any conversation there, in your hearing, between Todd and 'Shively,' as to this trackage proposition down on Market street? A. *I don't remember that there was.*" The matter was not pursued further. This assignment is without merit. The question was repeated after the court's ruling and, as we have seen, was answered. This does not appear in the abstract. In this connection, and in others, we have been obliged to resort to the transcript of the record in order to get an intelligent understanding of the case. The abstract is insufficient, and counsel for the people have not furnished a supplemental abstract supplying the omitted matter. The missing matter, in some important particulars, produces an impression entirely different from that derived from a reading of the abstract. A transcript of record (of which there is only one copy) cannot be made to take the place of an abstract, particularly where, as here, six justices participate in the deliberation. We have a rule of court covering this matter. In *Western Finance & Dev. Co. v. Fisher,* 72 Colo. 121, 210 Pac. 66,

Mr. Justice Campbell said: ''We might summarily dismiss the writ because of the defective, incomplete and misleading abstract of the record. * * * Under our established rule, as well stated in *Shideler v. Fisher,* 13 Colo. App. 106, these defects in the abstract of record would justify an affirmance of the judgment without any consideration of the errors which the plaintiff in error has assigned and discussed. When a plaintiff desires this court to review a judgment, he must present in his abstract all the material facts necessary to a complete and adequate understanding of the issues.''

5. By the witness Halderman, Todd offered to prove that during the latter part of June, 1926, at the Albany hotel in Denver, the witness met a man who represented himself to be Josiah M. Shively, and that the man talked to the witness about his claim to this trackage property. The description of the man, according to the offered testimony, corresponds closely, but not exactly, with the description given by Todd of the man who, he testified, sold him the property. The objection to this offer was sustained. The only purpose that could be served by the offered testimony was to corroborate Todd's testimony that there was in fact a man in Denver claiming to be Shively, the owner of the trackage property. But that fact was corroborated by the deed of the trackage property, signed ''Josiah M. Shively,'' and by the notary's certificate that ''Josiah M. Shively,'' personally known to her to be the person whose name is subscribed to the deed, appeared before her in person, ''and acknowledged that he signed, sealed and delivered the said instrument of writing as his free and voluntary act, for the uses and purposes therein set forth.'' There was further corroboration by the testimony of Shelton, to which we have already called attention. That somebody was impersonating the real Shively, is undisputed, and that is all that the offered testimony would show. The important question is this: Was the impostor engaged in swindling Todd, or was he a tool employed by Todd to help the

latter swindle Levand? This assignment of error cannot be sustained.

6. Todd offered in evidence a lease of the Adams county land given in October, 1926, by "Josiah M. Shively" to J. E. Artrip, and a check given in that month by the tenant Artrip to "Shively" for the latter's interest in the crops. An objection to this offer was sustained. The court has some discretion in the admission and rejection of evidence; and we cannot say that, in making this ruling, the court's discretion was abused. The lease and the check were given some 4 months after the Todd-"Shively" deal was closed, and they were given in connection with a transaction between third persons.

7. Another assignment is, that it was error to permit the district attorney to ask Todd, on cross-examination, whether he had committed other offenses of the same nature as the one charged. It is contended that such evidence can be introduced only in chief or on rebuttal. The testimony of Todd, on direct examination, tended to show good faith, in other words, absence of criminal intent. Such cross-examination was directed to the question of intent, and therefore was permissible.

8. The instructions requested by Todd, so far as applicable to the case, were covered sufficiently by the instructions given to the jury.

9. The instructions given by the court are not open to the objections urged by counsel. Taken as a whole, they fully and fairly presented the law of the case, and adequately protected the rights of Todd.

The other assignments of error need not be discussed. It is sufficient to say that they are without merit.

In the absence of a dependable abstract, we resorted to the transcript of the record; and, having read it, we have no doubt of the fairness of the trial, of the correctness of the verdict, or of the justness of the sentence.

The judgment is affirmed.

MR. JUSTICE WHITFORD did not participate.